UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
 12-CR-103S (1)

KENNETH PETTWAY, JR.,

   Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Kenneth Pettway, Jr.'s second motion to dismiss the indictment against him on speedy-trial grounds. (Docket No. 980.) Pettway seeks both dismissal of the indictment and reconsideration of this Court's previous decision denying his first speedy-trial motion. See United States v. Pettway, No. 12-CR-103S (1), 2017 WL 3475434 (W.D.N.Y. Aug. 11, 2017). For the reasons discussed below, Pettway's motion is denied in its entirety.

## II. BACKGROUND

On May 22, 2018, Pettway proceeded to trial before the Honorable Thomas J. McAvoy[1] on a 5-count indictment that charged him with controlled substances and firearms offenses, in violation of 21 U.S.C. §§ 841 (a)(1), 846, and 18 U.S.C. §§ 922

---

[1] Judge McAvoy of the Northern District of New York presided over the trial of this matter as a visiting judge after it was determined that an ongoing criminal trial before this Court would prevent it from trying this case as scheduled. (Docket No. 998.) With Judge McAvoy's consent, however, this Court retained Pettway's instant speedy-trial motion in the interests of judicial economy given its familiarity with the issues and because the motion seeks reconsideration of this Court's previous decision. (Docket No. 1028.) This Court is grateful to Judge McAvoy for his service to this district in this and other cases.

(g)(1), 924 (a)(2), 924 (c)(1). (Docket No. 1033.) Nine days later, the jury convicted Pettway on each count. (Docket Nos. 1026, 1034, 1036.) Pettway is currently scheduled to be sentenced before Judge McAvoy on October 15, 2018. (Docket No. 1098.)

Three weeks before trial, Pettway filed his second speedy-trial motion. (Docket No. 980.) This Court immediately directed the government to respond. (Docket No. 982.) In the interim, Pettway supplemented his motion. (Docket No. 993.) The government thereafter moved to extend its time to respond, which this Court granted. (Docket Nos. 997, 998.)

On May 22, 2018, the date of jury selection, the government timely filed its response to Pettway's motion. (Docket No. 1013.) After unsuccessfully moving to strike the government's response (see Docket Nos.1025, 1028), Pettway filed a reply on June 15, 2018; the government filed a sur-reply on June 25, 2018; and Pettway filed a sur-sur-reply on August 31, 2018. (Docket Nos. 1043, 1047, 1103.) Upon the completion of this full briefing, this Court took the motion under advisement without oral argument. (Docket No. 1028.)

### III. DISCUSSION

**A.    Sixth Amendment Right to a Speedy Trial**

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The speedy trial guarantee "is as fundamental as any of the rights secured by the Sixth Amendment." Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.

Ct. 988, 18 L. Ed. 2d 1 (1967).  This right "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." United States v. MacDonald, 456 U.S. 1, 8, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982); see United States v. Ewell, 383 U.S. 116, 120, 86 S. Ct. 773, 776, 15 L. Ed. 2d 627 (1966) (describing the speedy-trial guarantee as "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself").

Society has an interest in speedy trials as well.  Speedy trials limit an accused's ability to leverage a court's backlog of cases to obtain a more advantageous plea resolution; protect the community by reducing a non-detained accused's opportunity to commit other crimes; shorten the time available to abscond; increase the opportunity for effective rehabilitation by minimizing delay between arrest and punishment; and reduce the expense and overcrowding concerns attendant to pretrial incarceration.  See Barker v. Wingo, 407 U.S. 514, 519-20, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) (explaining the societal interest as "exist[ing] separate from, and at times in opposition to, the interests of the accused"); United States v. Ghailani, 733 F.3d 29, 41 (2d Cir. 2013) (recognizing that "the public has an interest in quickly bringing defendants to trial to prevent a backlog of cases that might permit dangerous criminals to linger unsupervised for extended periods of time while on bail, delay rehabilitation, and otherwise hinder the criminal justice

system").

Partly because of these often-dueling interests, the speedy-trial right has been described as "amorphous," "slippery," and "necessarily relative." Barker, 407 U.S. at 522 (quoting Beavers v. Haubert, 198 U.S. 77, 87, 25 S. Ct. 573, 576, 49 L. Ed. 950 (1905)). "It is consistent with delays and depends upon circumstances." Beavers, 198 U.S. at 87. The right therefore cannot be measured in a finite number of days, months, or years, "largely because what may be considered 'speedy' is necessarily dependent on the nature of the trial and the parties' interests in the given case." Ghailani, 733 F.3d at 41; see Barker 407 U.S. at 521 ("It is . . . impossible to determine with precision when the right has been denied. We cannot definitively say how long is too long in a system where justice is supposed to be swift but deliberate."); Ewell, 383 U.S. at 120 ("A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself."); United States v. Ray, 578 F.3d 184, 191 (2d Cir. 2009) (noting that the right "neither prohibits all delays, nor establishes a strict time limit between the announcement of a charge and the commencement of trial").

Rather, a balancing test is employed to shape the contours of the speedy-trial right. The United States Supreme Court first set forth this test in Barker, where it outlined four factors to be weighed in assessing a speedy-trial claim: the length of delay; the reason for the delay; the defendant's assertion of his right; and prejudice to the defendant. 407 U.S. at 530. These factors must be considered together, as none alone has the "talismanic" quality sufficient to find deprivation of the speedy-trial right. Id. at 533. The Barker balancing process is difficult and sensitive but must be carried out with "full

recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." Id. If the speedy-trial right is violated, dismissal of the charges with prejudice is mandatory. Strunk v. United States, 412 U.S. 434, 440, 93 S. Ct. 2260, 37 L. Ed. 2d 56 (1973).

Finally, the government and the court share the burden of bringing criminal cases to trial promptly. See United States v. New Buffalo Amusement Corp., 600 F.2d 368, 378 (2d Cir. 1979); United States v. Vispi, 545 F.2d 328, 334 (2d Cir. 1976). And where the delay is substantial, the government bears the burden of proving that the delay was justified and that the defendant's speedy-trial rights were not violated. New Buffalo Amusement, 600 F.2d at 378; United States v. Tigano, 880 F.3d 602, 612 (2d Cir. 2018).

**B.     Pettway's Request for Reconsideration**

On August 11, 2017, this Court denied Pettway's first motion to dismiss asserting violations of his speedy-trial rights under the Speedy Trial Act, 18 U.S.C. § 3161 et seq. and the Sixth Amendment. See Pettway, 2017 WL 3475434, at *5. This Court first found that Pettway's "non-specific, speculative assertions" were "wholly insufficient" to meet his burden of demonstrating a Speedy Trial Act violation. Id. at *2. Second, as it relates to the Sixth Amendment, this Court found relative to the Barker factors that (1) the 67-month delay to that point was presumptively prejudicial; (2) the government was not solely responsible for any period of unreasonable delay, but rather, the defendants' litigation strategy was predominantly the cause of the protracted delays; (3) Pettway did not begin meaningfully asserting his speedy-trial rights until January 2017; and (4) Pettway did not demonstrate prejudice or disadvantage arising from the delay sufficient

5

to establish a constitutional violation. See id. at *2-5. This Court therefore found that consideration of the Barker factors counseled against finding a Sixth Amendment speedy-trial violation. See id. at *5. Pettway now seeks reconsideration.

Generally, a district judge may modify pre-trial rulings and interlocutory orders at any time before final judgment. See In re United States, 733 F.2d 10, 13 (2d Cir. 1984). Reconsideration of a prior decision is generally justified in any one of the following three circumstances: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992); see also Shrader v. CSZ Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court"); Amerisure Ins. Co. v. Laserage Tech. Corp., No. 96-CV-6313, 1998 WL 310750, *1 (W.D.N.Y. Feb. 12, 1998) (citing United States v. Adegbite, 877 F.2d 174, 178 (2d Cir. 1989)).

The decision whether to grant or deny a motion to reconsider lies in the court's discretion. See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983). Parties bringing motions to reconsider "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." Duane v. Spaulding and Rogers Mfg. Inc., No. 92-CV-305, 1994 WL 494651, *1 (N.D.N.Y. Aug. 10, 1994) (quoting McDowell Oil Serv. v. Interstate Fire and Cas., 817 F. Supp. 538, 541 (M.D.Pa. 1993)). Motions for reconsideration are not to be used as a means

reargue matters already disposed of by prior rulings or to put forward additional arguments that could have been raised before the decision. See Duane, 1994 WL 494651 at *1. After all, a "motion for reconsideration is not a device intended to give an unhappy litigant one additional chance to sway the judge." Nossek v. Bd. of Ed. of Duanesburg Cent. Sch. Dist., No. 94-CV-219, 1994 WL 688298, *1 (N.D.N.Y. Nov. 10, 1994).

Pettway maintains that reconsideration is warranted on the basis that two decisions from the United States Court of Appeals for the Second Circuit—United States v. Pennick and United States v. Tigano—constitute intervening changes in controlling law concerning how delay should be attributed under the Barker factors. 713 Fed.Appx. 33 (2d Cir. 2017); 880 F.3d 602 (2d Cir. 2018). Pettway also seeks to reopen and reargue issues already decided.

To begin, Pennick and Tigano are not intervening changes in controlling law. At best, they reiterate and apply existing law, as Pettway appears to concede. (Docket No. 980-1, p. 12 (describing Pennick and Tigano as "clarif[ying] controlling law regarding a defendant's speedy trial rights").) Pennick reiterated that institutional delay under the Barker factors must be attributed to the government, including the court's delay in deciding motions. See Pennick, 715 Fed.Appx. at 35. Similarly, Tigano addressed administrative delays, noting that "[a]dministrative delays are counted against the government." Tigano, 880 F.3d at 614-15. These cases did not break new ground or change controlling law, as evidenced by both the Pennick and Tigano courts' citations to cases dating back to 1977. See Pennick, 715 Fed. Appx. at 35 (citing New Buffalo

Amusement, 600 F.2d at 377; United States v. Carini, 562 F.2d 144, 149-50 (2d Cir. 1977); United States v. Bert, 814 F.3d 70, 85 (2d Cir. 2016)); see Tigano, 880 F.3d at 614 (citing Carini, 562 F.2d at 149-50). Consequently, there is no basis for reconsideration based on an intervening change in controlling law.

The other grounds that Pettway asserts for reconsideration are improper attempts to gain a second bite at the apple. See Nossek, 1994 WL 688298, at *1. In voicing his disagreement with this Court's previous decision, Pettway maintains that this Court (1) failed to properly consider institutional and administrative delays, (2) afforded too little weight to his arguments concerning the effect of the government superseding the indictment, (3) discounted his argument concerning whether the government's appeal was frivolous, (4) overemphasized his failure to file a severance motion, (5) concluded incorrectly that he failed to raise speedy-trial objections before January 2017, and (6) failed to properly consider prejudice. (Docket No. 980-1, pp. 13-14.)

It is well settled that "[a] party may not . . . use a motion for reconsideration to re-argue issues that have already been decided, present 'new theories' or arguments that could have been raised earlier, seek a new hearing 'on the merits, or [to] otherwise tak[e] a second bite at the apple.'" See Groomes v. Frazir, No. 3:17CV1072(JCH), 2018 WL 745954, at * (D. Conn. Feb. 7, 2018)) (citing Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), in turn quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)). Here, Pettway clearly disagrees with the previous decision, but this Court properly considered and assessed his speedy-trial motion under the Barker framework and gave each of his arguments full and fair consideration. None of the

8

circumstances warranting reconsideration apply here; Pettway simply seeks to relitigate his motion with new counsel. Such is not the proper use of a motion for reconsideration. See Duane, 1994 WL 494651, at *1. Consequently, there being no valid basis for reconsideration, Pettway's motion is denied.

**C.    Pettway's Request for Dismissal**

With the finding that reconsideration is not warranted, the question becomes whether the additional 9-month delay between August 11, 2017 (the date of the first speedy-trial decision) and May 22, 2018 (the date trial began), considered alone or in conjunction with the previous delay, violated Pettway's constitutional right to a speedy trial.

At the time this Court denied Pettway's first speedy-trial motion, trial had already been scheduled to commence on September 26, 2017. (Docket No. 820.) In addition, time had been excluded under the Speedy Trial Act through September 26, 2017, for continuity of counsel and trial preparation, under 18 U.S.C. § 3161 (h)(7)(B)(iv); due to pending motions, under 18 U.S.C. § 3161 (h)(1)(D); and in the interests of justice, under 18 U.S.C. § 3161 (h)(7)(A). (Docket No. 820.)

The parties appeared before this Court on August 14, 2017, at which time several pretrial issues were discussed, including Pettway's pending suppression motion. (Docket No. 844.)

The parties next appeared on September 20, 2017, at which time Pettway requested that the trial date be adjourned to allow for further trial preparation. (Docket No. 862). Numerous other trial-related matters were also discussed, including this Court

directing the government to disclose the identity of its final undisclosed witness by September 25, 2017. (Docket No. 862.) At Pettway's request, this Court rescheduled trial for September 29, 2017, and excluded time through that date in the interests of justice under 18 U.S.C. § 3161 (h)(7)(A). (Docket No. 862.)

Additional pretrial matters were discussed at an appearance on September 25, 2017, but the government had not yet disclosed its witness. (Docket No. 873.)

Trial was then adjourned until October 5, 2017, to permit additional time for Pettway to prepare for trial and to ensure continuity of counsel, with accompanying exclusions of time under 18 U.S.C. §§ 3161 (h)(7)(A) and (h)(7)(B)(iv). (Docket No. 872.) The parties appeared on October 5, 2017, at which time a recently discovered possible conflict concerning Pettway's attorney and the government's just-disclosed witness was discussed. (Docket No. 887.) In light of the need to resolve this conflict, this Court adjourned the trial, appointed independent counsel to advise Pettway, and conducted further status conferences with appropriate exclusions of time. (Docket Nos. 887, 891, 898, 903.)

On December 20, 2017, after full proceedings, this Court determined that Pettway's attorney suffered from an actual, non-waivable conflict-of-interest that required his replacement as trial counsel. (Docket No. 910.) This Court therefore indicated that new counsel would be assigned, and it directed the parties to appear again for a status conference on January 24, 2018, with an exclusion of time for continuity of counsel and interests of justice under 18 U.S.C. §§ 3161 (h)(7)(A) and (h)(7)(B)(iv). (Docket No. 910.) Two days later, this Court granted Pettway's motion for release on conditions. (Docket

No. 911.)

On January 24, 2018, this Court assigned new counsel to represent Pettway and re-scheduled trial to begin on May 22, 2018, with exclusions of time through that date under 18 U.S.C. §§ 3161 (h)(7)(A), (h)(7)(B)(iv), (h)(1)(D). The parties thereafter appeared regularly for status conferences to discuss trial preparation and trial readiness, until trial commenced before Judge McAvoy on May 22, 2018. (Docket Nos. 956, 962, 976, 998, 1014.)

Pettway argues that this additional period of delay, alone and in conjunction with the preceding 67-month period of delay, violated his Sixth Amendment right to a speedy trial. As noted above, this argument requires examination of the Barker factors: the length of delay; the reason for the delay; the defendant's assertion of his right; and prejudice to the defendant. 407 U.S. at 530.

First, taken together with the previous 67-month delay, this additional delay of nine months or so adds to the presumption of prejudice triggering further analysis under Barker. See Doggett v. United States, 505 U.S. 647, 652, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992) (delays approaching 12 months are presumptively prejudicial); Flowers v. Warden, Conn. Corr. Inst., 853 F.2d 131, 133 (2d Cir. 1988) (delay of 17 months is presumptively prejudicial).

Second, the delay here, while largely attributable to the government, was not intentional. The delay was occasioned by the unwaivable conflict-of-interest that prevented Pettway's trial counsel from continuing in the case. This conflict-of-interest was not discovered until the identity of the government's witness, which had previously

been withheld for security reasons, was disclosed to Pettway. It was then discovered that Pettway's lawyer had previously represented the witness, resulting in the conflict. At the time, this Court heavily criticized the government for not having procedures in place to avoid such last-minute circumstances, but there is no indication that the government ever concealed the witness's identity for any reason other than witness safety. In other words, the government did not act intentionally to avoid discovery of the conflict or to delay or derail Pettway's defense. Consequently, while the majority of this period of delay is rightly charged to the government, it is weighed less heavily than if the government acted intentionally to Pettway's detriment. See Barker, 407 U.S. at 531 (instructing that prosecutorial negligence is weighed less heavily than a deliberate attempt to delay the trial to hamper the defense).

Third, the record reflects that Pettway continually asserted his rights to a speedy trial during this time. See Barker, 407 U.S. at 532 (noting that a defendant's assertion of his speedy trial rights is given strong evidentiary weight).

Fourth, Pettway has not suffered significant prejudice by the additional delay. Prejudice to the defendant is assessed in light of the interests the speedy trial right was designed to protect. Id. at 532. The Supreme Court identified three such interests: to prevent oppressive pretrial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. Id. The most serious of these interests is the last, because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. Here, Pettway was not subjected to pretrial incarceration for a majority of the additional period of delay. Moreover, there is

no indication of any heightened anxiety or concern during this period. And while the conflict situation required that Pettway be appointed new counsel, his new counsel was a zealous advocate who quickly familiarized himself with the record and provided sound representation, resulting in no material impairment to Pettway's defense.

In the end, having considered and balanced the Barker factors, this Court finds that the circumstances of the additional delay, considered alone or in conjunction with the previous delay, do not sufficiently establish a constitutional violation. Pettway's motion to dismiss on speedy trial grounds is therefore denied.

## IV. CONCLUSION

For the reasons stated above, this Court finds no basis to reconsider its previous speedy-trial decision, and further finds that Pettway's rights to a speedy trial under the Sixth Amendment have not been violated. Defendant's Motion to Reconsider and to Dismiss the Indictment is therefore denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Reconsideration and to Dismiss the Indictment (Docket No. 980) is DENIED.

SO ORDERED.

Dated: October 7, 2018
      Buffalo, New York

    /s/William M. Skretny
    WILLIAM M. SKRETNY
    United States District Judge