UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                            **DECISION AND ORDER**
                                                         12-CR-103S (1)

KENNETH PETTWAY, JR.,

                Defendant.

On May 21, 2024, this Court denied Defendant Kenneth Pettway, Jr.'s second motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. See United States v. Pettway, 12-CR-103S (1), 2024 WL 2286255 (W.D.N.Y. May 21, 2024). Pettway seeks reconsideration of that decision on several grounds. (Docket No. 1355.) For the reasons below, Pettway's motion is denied.

Motions for reconsideration brought in criminal cases are assessed under the civil reconsideration standard, since there is no express criminal procedure provision for such motions. See United States v. Larson, No. 07-CR-304S, 2013 WL 6196292, at *2 (W.D.N.Y. Nov. 27, 2013) (collecting cases). Reconsideration is generally justified in any one of the following three circumstances: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); see also Shrader v. CSZ Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might

1

reasonably be expected to alter the conclusion reached by the court"); Amerisure Ins. Co. v. Laserage Tech. Corp., No. 96-CV-6313, 1998 WL 310750, at *1 (W.D.N.Y. Feb. 12, 1998) (citing United States v. Adegbite, 877 F.2d 174, 178 (2d Cir. 1989)).

The decision whether to grant or deny reconsideration lies in the court's discretion. See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983). Parties seeking reconsideration "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." Duane v. Spaulding & Rogers Mfg. Inc., No. 92-CV-305, 1994 WL 494651, *1 (N.D.N.Y. Aug. 10, 1994) (quoting McDowell Oil Serv. v. Interstate Fire and Cas., 817 F. Supp. 538, 541 (M.D.Pa. 1993)). Motions for reconsideration are not to be used as a means to reargue matters already disposed of by previous rulings or to put forward additional arguments that could have been raised before the decision. See Duane, 1994 WL 494651, at *1. After all, a "motion for reconsideration is not a device intended to give an unhappy litigant one additional chance to sway the judge." Nossek v. Bd. of Ed. of Duanesburg Cent. Sch. Dist., No. 94-CV-219, 1994 WL 688298, at *1 (N.D.N.Y. Nov. 10, 1994).

This Court previously determined that Pettway's second motion for a new trial was procedurally barred and otherwise lacked merit. See Pettway, 2024 WL 2286255, at *1. Pettway contends that reconsideration is required because this Court overlooked or misinterpreted his ineffective-assistance-of-counsel claims and sufficiency-of-the-evidence arguments. The government maintains that there is no basis for reconsideration. (Docket No. 1357.) This Court agrees.

In its previous decision, this Court found that Pettway's motion was untimely and

2

that he had not demonstrated excusable neglect to extend the filing period. See Pettway, 2024 WL 2286255, at *5-7. To determine excusable neglect, courts consider "(1) the danger of prejudice to the [non-movant]; (2) the length of the delay and its potential impact upon judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith." United States v. Scali, No. 16-CR-466 (NSR), 2018 WL 3536082, at *2 (S.D.N.Y. July 23, 2018) (alteration in original; citations and internal quotation marks omitted); see also United States v. Graham, No. 12-CR-311A, 2015 WL 1120255, at *3 (W.D.N.Y. Mar. 12, 2015).

This Court found that the first three factors weighed against Pettway, with only the fourth factor weighing in his favor. See Pettway, 2024 WL 2286255, at *6-7. In examining the third factor—reason for the delay—this Court found that ineffective assistance of counsel did not cause Pettway's delay in raising his prosecutorial-misconduct arguments, which predominated his motion. See id. Pettway does not challenge that determination, but argues that reconsideration is necessary because this Court did not specifically consider trial counsel's alleged ineffectiveness at trial in its excusable neglect analysis. While Pettway is technically correct, this Court elsewhere fully examined each of his ineffectiveness arguments and found none to be meritorious. See Pettway, 2024 WL 2286255, at *16-20.

Pettway argued (and continues to argue) that trial counsel was ineffective for failing to object to Kenneth James's testimony as to drug quantity; failing to request a limiting instruction; and failing to object to the government's constructive amendment of the

3

indictment. Each of these arguments was considered and rejected. See id. This Court found no ineffectiveness as it related to trial counsel's handling of James's testimony (more on this point below), see id. at *17-18; no prejudice from the lack of a request for a limiting instruction, see id. at *18; and no constructive amendment of the indictment, see id. at *19. Pettway's arguments having been rejected, they do not support a finding of excusable neglect. Reconsideration is therefore unwarranted, and Pettway's motion for a new trial remains procedurally barred.

Despite the procedural bar, this Court assessed the merits of Pettway's motion for the sake of completeness. Pettway argues that, in the course of doing so, this Court erred in considering his argument that the trial evidence was legally insufficient to establish that the Count 1 conspiracy involved a drug quantity of 280 grams or more of crack cocaine. Pettway variously accuses this Court of ignoring, disregarding, mischaracterizing, misapprehending, or failing to appreciate his argument. Yet this Court examined and discussed the sufficiency of the evidence underlying the Count 1 "charged conspiracy." See Pettway, 2024 WL 2286255, at *15. The "charged conspiracy" includes the drug-quantity element of 280 grams or more of crack cocaine. This Court found that Pettway's challenge failed. Id.

To be more specific, Pettway cannot meet the Rule 33 standard for winning a new trial based on insufficiency of evidence concerning drug quantity. On that ground, a new trial is warranted only if "the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." United States v. Archer, 977 F.3d 181, 188 (2d Cir. 2020) (citing United States v. Sanchez, 969 F.2d 1409,

4

1414 (2d Cir. 1992)). "Under that standard, unless the evidence was patently incredible or defied physical realities, or unless an evidentiary . . . error compromised the reliability of the verdict, a district court must defer to the jury's resolution of conflicting evidence." United States v. Lettieri, 21-CR-20-LJV, 2023 WL 6531514, at *4 (W.D.N.Y. Oct. 6, 2023) (citations omitted).

Pettway insists that Kenneth James's testimony is insufficient to establish the drug-quantity element of Count 1, because James did not testify to specific drug quantities or dates.  But such evidence is not required.

"The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes (1) transactions in which he participated directly, (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him, and (3) quantities he agreed to distribute or possess with intent to distribute regardless of whether he ultimately committed the substantive act." United States v. Pauling, 924 F.3d 649, 657 (2d Cir. 2019) (internal quotation marks omitted).

"To prove the quantity by one of these means beyond a reasonable doubt, the government must introduce specific evidence of drug quantities, *or evidence from which quantity can, through inference, be logically approximated or extrapolated*." Id. (emphasis added).  And "[t]he jury may reach its verdict based upon inferences drawn from circumstantial evidence." United States v. Eppolito, 543 F.3d 25, 45 (2d Cir. 2008); United States v. Shine, 17-CR-28-FPG-JJM, 2019 WL 6838623, at *3 (W.D.N.Y. Dec. 16, 2019) (finding that "while drug quantity may not be adduced through speculation or

5

inferential leaps, the government may meet its burden through specific, circumstantial evidence of quantity").

Here, the jury found that the government proved the 280-gram threshold charged in the Count 1 conspiracy, which occurred "[b]eginning sometime in 2010, and continuing sometime into late 2011, the exact dates being unknown." (Docket No. 1033.) And this Court previously found that "[e]ven in the absence of specific dates, James's testimony supports the reasonable inference and the jury's determination that Pettway engaged in the conspiracy as charged." Pettway, 2024 WL 2286255, at *15. Again, the "conspiracy as charged" includes drug quantity of 280 grams or more of crack cocaine.

To elaborate, James testified that Pettway was his crack cocaine supplier "back in 2011" and for the five years before. See Transcript, Docket No. 1172, pp. 117-18, 123-25, 174. At that time, James was selling pieces of crack cocaine weighing .4 grams for $40 each, what he referred to as "$40 pieces." Id. pp. 108-10, 121-122. On October 31, 2011, James was arrested and his residence was searched. Id. pp. 110-14 Among other items, law enforcement seized crack cocaine and $35,000 in cash. Id. pp. 110-12, 152. James testified that the $35,000 was from "probably almost a year" of him "selling crack." Id. p. 112.

From this evidence alone, the jury could reasonably infer and logically approximate the drug-quantity element. See Pauling, 924 F.3d at 657. James unequivocally testified that Pettway was his source of crack cocaine in 2010 and 2011, during the timeframe of the conspiracy. James also testified that he sold the crack cocaine that he got from Pettway in "$40 pieces"—.4 grams for $40—or $100 per gram. He further indicated that

6

the $35,000 seized from his residence constituted almost a year's worth of drug-trafficking activity.

Drug proceeds of $35,000 would be from the sale of 875 "$40 pieces," which would amount to 350 grams of crack cocaine (875 x .4 grams) distributed between 2010 and 2011 (the year prior to James's arrest).  See Shine, 2019 WL 6838623, at *4 n. 4 (employing similar inferential analysis: "$1000 would be 20 baggies at $50 per baggie, which would amount to approximately 8.8 grams of cocaine base.")  The jury thus could reasonably infer that Pettway distributed 280 grams or more of crack cocaine during the timeframe of the conspiracy.  Cf. United States v. Cotto, No. 21-2791-cr, 2023 WL 2027277, at *2 (2d Cir. Feb. 16, 2023) (finding sufficient evidence of drug quantity because "the jury could reasonably have relied upon Ortiz's statement that the 29 grams of heroin was 'the week's worth' of drugs, along with evidence demonstrating that the conspiracy had a much longer duration than one week, to support an inference that the conspiracy distributed that amount on a weekly basis, or at least on some weeks."); cf. United States v. Walker, 750 F. App'x 324, 326 (5th Cir. 2018) (summary order) ("So, if a witness testifies that he bought a gram of crack each week for a year, the jury can do the basic math and conclude that the defendant sold about 50 grams.").

This inference is further supported by James's less specific testimony that he purchased drugs from Pettway in various quantities both during the timeframe of the charged conspiracy and several years before.  James testified that he knew Pettway from the Bailey area of Buffalo and purchased crack cocaine from him "more times than [he] could count" between 2006 and 2011, and purchased ounce-quantities from him

7

"[s]omewhere between ten and 20" times.  See Transcript, Docket No. 1172, pp. 118, 123-24.  James also bought half-ounces and "8-balls" from Pettway, id. pp. 122, 124, and he conducted controlled purchases from Pettway and his co-conspirators in 2011, id. pp. 129-132, 133-138, 144-151.  This evidence further supports the jury's verdict on Count 1.[1]

With Pettway not having demonstrated any error in this Court's conclusions that "James's testimony supports the reasonable inference and the jury's determination that Pettway engaged in the conspiracy as charged," Pettway, 2024 WL 2286255, at *15, or that "Pettway fails to show that the evidence predominates against the jury's verdict so heavily that it would be manifestly unjust to let the verdict stand," id. (citing Archer, 977 F.3d at 187), there is no basis for reconsideration.  Pettway's sufficiency-of-the-evidence argument fails.

Finally, Pettway argues that reconsideration is warranted because trial counsel was ineffective for failing to object to James's testimony, failing to request a limiting instruction concerning the timeframe of the conspiracy, and failing to argue that the government had not sufficiently proven the drug-quantity element of Count 1.  These contentions are variations of Pettway's previously rejected arguments.  See id. at *18-19.  And with this Court's finding that Pettway's drug-quantity arguments lack merit, there is no error that requires reconsideration.

---

1 Notably, the presiding trial judge found the evidence of Pettway's overall guilt to be "overwhelming."  See United States v. Pettway, 12-CR-103 (TJM), 2018 WL 4958962, at *6 (W.D.N.Y. Oct. 15, 2018) (McAvoy, J.) ("In any case, the Court finds that the evidence against the Defendant in this case—which included a number of witnesses who identified Defendant as involved in the drug conspiracy and drug crimes in question, as well as evidence that tied him to the gun crimes involved—was overwhelming.").

Accordingly, having fully considered Pettway's motion for reconsideration, this Court finds that it must be denied.

IT HEREBY IS ORDERED, that Pettway's Motion for Reconsideration (Docket No. 1355) is DENIED.

FURTHER, that the parties must appear before this Court on May 28, 2025, at 10:00 a.m., for a status conference to determine how best to proceed to resentencing.

SO ORDERED.

Date:  May 13, 2025
       Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge